IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
03 AUG 14 PM 1:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
AUG 1 4 2003

VIRGINIA F. HOLLIDAY,

    PLAINTIFF,

v.                                                              CASE NO.: CV-02-J-1387-S

ALLSTATE INSURANCE COMPANY,

    DEFENDANT.

## MEMORANDUM OPINION

Pending before the court is the defendant's motion for summary judgment (doc. 49), evidence in support of said motion (doc. 50) and memorandum in support of its motion, to which the plaintiff has responded by submitting evidence (doc. 55) and a response in opposition to said motion. The defendant thereafter filed a reply. Having considered the pleadings, evidence and memoranda of the parties, the court finds as follows:[1]

### I. Factual Background

Plaintiff sues her past employer for violation of Title VII, 42 U.S.C. §§ 2000e *et seq.*, for race and gender discrimination (Counts I and III); 42 U.S.C. § 1981, for

---

[1] Defendant requested oral argument. Being of the opinion oral argument would not substantially assist the court, said request is hereby **DENIED**.

race discrimination (Count II); the Equal Pay Act of the Fair Labor Standards Act (EPA), 29 U.S.C. §§ 206(d)(1), *et seq.* (Count VII); and retaliation (Count V).[2]

The plaintiff is a white woman who began working for the defendant, as a staff attorney, in 1994.[3] She asserts that due to race and gender discrimination resulting in inequitable treatment against her, as reflected in her allegedly unequal pay, the work environment was so intolerable that she was constructively discharged in June, 2001. *See* plaintiff depo. at 18. The race and gender discrimination included newer white male, black male, and black female attorney hires being given a starting salary that was a greater jump from their previous employment than the plaintiff received. The plaintiff asserts that, even though she was the highest paid attorney in defendant's Birmingham Legal office, she did not earn as much more than the other attorneys as she should have absent the discrimination.

The plaintiff asserts that her supervisor, Ronnie Moore, a black male, demonstrated his favoritism for blacks employees in hiring Celeste Armstrong, a black female, as an attorney.[4] Plaintiff depo. at 18. This was discriminatory because she had less experience than the attorney hired before her, Brian Slaughter, a white

---

[2]The plaintiff previously dismissed all of her claims against individual defendant Holloway and Counts Four, Six, Eight, Nine and Ten of her complaint (doc. 41).

[3]The plaintiff became licensed as an attorney in 1990. Plaintiff depo. at 28, 55.

[4]Ronnie Moore was employed by defendant as lead counsel with Litigation Services Division in Atlanta. Moore depo. at 7.

2

male, but was hired at a greater salary. *Id.* at 35-37. Further, Moore's hiring of Delaine Turner, Armstrong's sister, as a paralegal although Turner had no paralegal experience, was discriminatory. *Id.* at 19. Additionally, Moore giving Armstrong and Roger Varner, a black male, additional administrative duties was due to this favoritism.[5] *Id.* at 19, 41-42, 161-162, 166-167. However, plaintiff could not remember what these duties might have been. *Id.* at 25-26. She alleges that there "were obvious things in the office that were favoritism toward people that were favored."[6] *Id.* at 19. *See also* plaintiff depo. at 343 (stating Moore showed favoritism toward Armstrong and Varner as evidence of race and gender discrimination).

Plaintiff agrees that nothing about Armstrong's hiring or pay affected the plaintiff. Plaintiff depo. at 20. However, the plaintiff states Armstrong was given a lesser case load, which was unfair. *Id.* at 21, 117-118. She then states she is not complaining that she had more cases than Armstrong. *Id.* at 119.

The plaintiff also alleges that Moore's instruction to stop assigning cases to plaintiff was discriminatory. Plaintiff depo. at 25, 346-347. *See also* Slaughter affidavit, ¶ 4; Slaughter depo. at 30-32, 90. The plaintiff further alleges that she

---

[5]Plaintiff recommended to Moore that Varner be hired by defendant. Plaintiff depo. at 33.

[6]For her 1999 job performance, Moore nominated for, and the plaintiff received, the Chairman's Award, which was an honor. Plaintiff exhibit 40.

should have been started at a higher salary when she began working for defendant in 1994. Plaintiff depo. at 47-48, 52-54. However, she made more than the other attorneys in her office. *Id.* at 259. She asserts that the favoritism and retaliation were so bad that she had to leave this employment. *Id.* at 346.

Upon the plaintiff bringing her claims to the attention of the defendant's corporate offices, the defendant through Juanita King met with the plaintiff, and found none of her allegations had any merit. King depo. at 152; Jackson depo. at 34-36, 58.[7] *See also* plaintiff exhibit 6; defendant exhibits 21 and 22.

At the time of the plaintiff's resignation, she was earning approximately $74,000.00 per year. Plaintiff depo. at 258. The plaintiff tendered her resignation in June, 2001 and began working for a private law firm that same month, with a yearly salary of $90,000.00. *Id.* at 235-236, 374-375, 464, 528; defendant exhibit 29. Although the plaintiff alleged that she was constructively discharged, she testified that every job change she has made has been voluntary. Plaintiff depo. at 265.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

---

[7]Racene Jackson works for the defendant in their human resources department. Jackson depo. at 7.

and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.Pro. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 249

(1986). The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

### III. LEGAL ANALYSIS

The court must consider the evidence in the light most favorable to the plaintiff and may not make credibility determinations nor weigh the parties' evidence. *Frederick v. Sprint/United Management Co.* 246 F.3d 1305, 1311 (11th Cir.2001); *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir.2000). With these standards in mind, the court considers each of the plaintiff's claims.

Plaintiff asserts that the above facts constitute race and sex discrimination, retaliation and violations of the Equal Pay Act. As the court can find no direct evidence of discrimination, the court applies the analysis required for circumstantial evidence. This court must apply a three prong test fashioned by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973). *See also Texas Department of Community Affairs v. Burdine,* 450 U.S. 248; 252-253; 101 S.Ct. 1089, 1093-1094 (1981). First, the plaintiff must establish a *prima facie* case of discrimination. *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824. Establishment of a *prima facie* case creates a presumption that the employer unlawfully discriminated against the employee. *Burdine*, 450 U.S. at 254, 101 S.Ct.

at 1094; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-1528 (11th Cir. 1997).

Assuming the employee meets this burden, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the alleged discriminatory employment action. *Harris v. Shelby County Board of Education*, 99 F.3d 1078, 1083 (11th Cir.1996). The defendant can feasibly present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted. *Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946, 950 (11th Cir.1991), *cert. denied*, 502 U.S. 1058 (1992)(quoting *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 596 (11th Cir.1987).

Once a defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination drops from the case. *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094 and n. 10. The plaintiff must then demonstrate by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825. The focus of the case after the defendant meets its burden of production is on the defendant's subjective intent and the motivation behind the defendant's adverse employment action directed at plaintiff. *Harris*, 99 F.3d at 1083.

## A. Gender Discrimination

The plaintiff meets her prima facie burden of proof by establishing that (1) she is a member of a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) her employer treated similarly situated employees outside the protected classification more favorably. *Rice-Lamar v. City of Fort Lauderdale, Florida,* 232 F.3d 836, 842-43 (11th Cir. 2000), citing *Holifield v. Reno,* 115 F.3d 1555, 1562-63 (11th Cir.1997). The court has carefully read the plaintiff's and the defendant's evidentiary submissions. The plaintiff meets the first two elements of her *prima facie* case. However, the court finds no evidence of an adverse employment action. The plaintiff states the sole basis of her gender discrimination claim is salary inequities. Plaintiff depo. at 66. When asked what was her evidence of gender discrimination, the plaintiff states it had to do with unfair pay, and states that she had more experience that Jay (male), Brian (male), Roger (male), and Celeste (female). *Id.* at 44-45, 52-54, 65. However, when asked how this could be gender discrimination if Celeste Armstrong was also favored, the plaintiff replied that Celeste was not there when this happened. *Id.* at 66.

The court has considered the more than one thousand pages of deposition testimony that was submitted by the parties. The court finds the facts, as drawn from that evidence, simply do not support the plaintiff's allegation of gender

8

discrimination. This is especially true in light of the fact that the plaintiff asserts that both males and females were treated better than she was. The court shall grant the defendant's motion for summary judgment on this count of the complaint.

## 42 U.S.C. § 1981 and Race Discrimination

Plaintiff assert that the facts of this case also constitute race discrimination under 42 U.S.C. § 2000e and 42 U.S.C. § 1981.[8] Whether this case is pursuant to 42 U.S.C. § 2000e or § 1981, the same substantive proof is required and analyzed under the same framework. *See e.g., Bass v. Board of County Com'rs, Orange County, Florida,* 256 F.3d 1095, 1109 n. 4 (11th Cir.2001); *Standard v. A.B.E.L. Services, Inc.,* 161 F.3d 1318, 1330 (11th Cir.1998). For a prima facie case, the plaintiff must show that (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) the employer treated similarly situated employees outside the class more favorably; and (4) she was qualified to do her job. *See Rice-Lamar v. City of Fort Lauderdale, Florida,* 232 F.3d 836, 842-43 (11th Cir.2000); *EEOC v. Joe's Stone Crab, Inc.,* 220 F.3d 1263, 1286 (11th Cir.2000). Even if the court could find an adverse employment action suffered by the plaintiff, which it cannot, the court

---

[8]The plaintiff never related to Juanita King, Senior Human Resources Consultant in the corporate headquarters, that she had issues involving racial discrimination in pay. King depo. at 7, 132.

9

finds no similarly situated non-white individual who was treated more favorably than she was.[9]

The plaintiff's complaints center around co-workers not being nice to her.[10] *See e.g.*, plaintiff complaint at 23. Even if this could be deemed unfair treatment, that alone, without discrimination, is not an unlawful employment practice under Title VII. *See e.g., Coutu v. Martin County Brd. of County Comm'rs*, 47 F.3d 1068, 1074 (11th Cir.1995). The court shall grant the defendant's motion for summary judgment on these counts of the complaint.

*Equal Pay Act*

An employee demonstrates a prima facie case of an Equal Pay Act violation by showing that the employer paid employees of the opposite gender different wages for equal work for jobs which require "'equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Steger v. General Elec. Co.*, 318 F.3d 1066, 1077-78 (11th Cir.2003); citing *Irby v. Bittick*, 44 F.3d 949, 954 (11th

---

[9] The court notes that in his tenure, Moore hired a black male, a black female and a white male as attorneys in the Birmingham legal office. *See* Holloway depo. at 133.

[10] The court notes that the plaintiff performed a variety of acts which a reasonable person could expect to anger co-workers. Although the court declines to delineate all of these actions, they include attempting to hire a private investigator to determine her co-workers salaries, running computer reports to check up on what other attorneys in the office had pending, and having a lock box installed on the thermostat so that no one in the office could change the temperature.

10

Cir.1995) (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974) and 29 U.S.C. § 206(d)(1).

The plaintiff asserts that, although she was the highest paid attorney in the office, she did not earn enough more than the other attorneys in her office. Plaintiff depo. at 64. However, she does not know how much more she should have been earning but for the allegedly discriminatory pay. Plaintiff depo. at 423. The defendant asserts that it considers, when establishing pay for attorneys, the years of legal experience each has, even if that experience is not with Allstate.[11] Lee depo. at 118-119. *See also* King depo. at 117-118. Thus, while the plaintiff had been employed by Allstate longer than Jay Holloway, Holloway had four more years of legal experience than the plaintiff because he graduated law school four years before the plaintiff did. Plaintiff depo. 55-56. The court can find no discrimination against the plaintiff in the manner which she was paid. Given that the plaintiff was earning more than any other attorney in her office, the court shall grant the defendant's motion for summary judgment on this count of the complaint.

---

[11] In other words, an attorney with five years experience who has been employed by defendant for all five of those years is not necessarily going to have a higher rate of pay than an attorney with twenty years experience who has been with Allstate just one year.

11

*Retaliation*

The plaintiff states she was subjected to retaliation for complaining about her office environment in November, 2000. Plaintiff depo. at 334-335, 378. The plaintiff actually reported to Moore's supervisor, Clifton Lee, that Moore was having an affair with Armstrong.[12] *Id.* at 335, 337-339, 344-347. The court is of the opinion that the plaintiff's reporting to Moore's supervisor that Moore was having an affair with Armstrong is not protected activity.[13] Even if this was protected activity, she reported the alleged affair to Lee **AFTER** Moore had complained to Lee about plaintiff's sub-satisfactory performance. Lee depo. at 73-74, 96-97. *See also* Moore depo. at 112-115, 236, 256-257, Lee depo. at 211; King depo. at 34, 41-44; defendant exhibits 30 and 31.

The plaintiff further testified that after Ted Colquett left in December, 1997, "[i]t seemed like there was still animosity of all that had gone on. And it never stopped, the environment in the office with retaliation, hostile, taking sides. There

---

[12]Clifton Lee is employed by defendant as managing attorney for Georgia, Alabama and Tennessee. Lee depo. at 6.

[13]The plaintiff had previously told Armstrong that Jay Holloway and Cristy Horsley were having an affair. Armstrong depo. at 47. She had also told other employees that Holloway was having an affair with a male co-employee. Holloway depo. at 172. *See also* Slaughter depo. at 72.

12

is no professionalism."[14]  Plaintiff depo. at 137.  This was apparently Christy Horsley's fault, because "she would keep things stirred up." *Id.* at 138. Horsley, a secretary, allegedly did this stirring because she was friendly with Colquett, who "had an ax to grind." *Id.* at 138.  The plaintiff clears this up by explaining that the environment was not hostile based on sex or race, but rather "a hostile environment because people were not getting along..." *Id.* at 139.

The plaintiff also testified, as evidence of retaliation, that after she reported the alleged affair of Moore and Armstrong, "there were talks that we had – Juanita came and met – Juanita King is black, Clifton Lee was black, Ronnie Moore was black. We met and things started getting really, really worse in the office.  One day it seemed like everybody else knew, Ronnie announced that Jay was getting a promotion to counsel.  And there seemed to be a great deal of glee and happiness that he was getting promoted over me."  Plaintiff depo. at 356.  Although the plaintiff asserts this was retaliation, the court notes that Jay Holloway is white, as is the plaintiff. *Id.* at 361.

Although Moore had drafted two negative mid-year reviews of the plaintiff, neither of them were ever administered to the plaintiff. Moore depo. at 29-30; Lee depo. at 64-65, 82, 84, 199; Gilmore depo. at 41; King at 179.  Both of these reviews

---

[14]Ronnie Moore replaced Ted Colquett in early 1998.  Holloway depo. at 122-123.

13

were completed by Moore prior to plaintiff's report that he was having an affair with Armstrong. *See* plaintiff's exhibits 3 and 5. Moore testified that the plaintiff's performance during 2000 was significantly different from her previous performance. Moore depo. at 137-138. *See also* Lee depo. at 68-69; Gilmore depo. at 88; Howell depo. at 44-45; Slaughter depo. at 59-60, 66-68. He first notified the plaintiff of problems in her performance in March, 2000. Moore depo. at 138, 144. Thereafter, the plaintiff received a "meets expectations" rather than "exceeds expectations" on her 2000 performance review. Moore depo. at 180-181; plaintiff exhibits 35-39; defendant exhibits 17and 20. Moore never stated that he would terminate the plaintiff if she did not improve, and did not have authority to terminate her. Moore depo. at 186. Lee testified he was involved in the problems Moore had with plaintiff in May, 2000. Lee depo. at 45, 47. Additionally, Lee testified that the plaintiff reported that her co-workers were treating her differently, and not Moore. Lee depo. at 104.

The court declines to extend the prohibition against retaliation for engaging in protected activity under Title VII to the above set of facts. This court finds the fact that the plaintiff's co-workers did not get along may have made her work environment hostile, but not for any prohibited reason. The court shall grant the defendant's motion for summary judgment on this count of the complaint.

The court having considered the foregoing, the court is of the opinion that the defendant's motion is due to be granted on all counts of the complaint. The court shall so rule by separate Order.

**DONE** and **ORDERED** this the 14 day of August, 2003.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE